

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00170-CR

THE STATE OF TEXAS                                  STATE

V.

CONNIE TORREZ                                  APPELLEE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY
## TRIAL COURT NO. 1399530

----------

## OPINION

----------

The State of Texas appeals the trial court's order granting the motion to suppress evidence filed by appellee Connie Torrez. In three related points, the State contends that the trial court erred by granting appellee's motion because a police officer's reasonable suspicion of a traffic offense—operating a vehicle with

one headlight out—supported the stop of appellee's car.[1]  We reverse the trial court's order and remand this case to the trial court for further proceedings.

**Background Facts**

One night in July 2014, Jeremy West, a sergeant with the Lake Worth Police Department, was in his patrol car and was stopped at an intersection when he saw a car approaching from his right side.  Appellee was the driver of that car, and she was approximately one hundred yards away from Sergeant West when he first saw her car.  As Sergeant West looked right, he saw that one of the headlights on appellee's car was not working.  The car stopped at the intersection, and after the car proceeded through the intersection while crossing the front of Sergeant West's patrol car, Sergeant West pulled in behind it. Sergeant West initiated a traffic stop to investigate an apparent traffic violation.[2] Based on circumstances that Sergeant West discovered after conducting the traffic stop, he arrested appellee for driving while intoxicated (DWI).

---

[1]*See* Tex. Transp. Code Ann. §§ 547.004(a)(2), .302(c), .321(b) (West 2011); *Francis v. State*, 425 S.W.3d 554, 556–60 (Tex. App.—Fort Worth 2014, no pet.) (explaining that driving at night without headlights illuminated is an offense that may support a traffic stop); *Williams v. State*, No. 04-02-00747-CR, 2003 WL 21658529, at *1 (Tex. App.—San Antonio July 16, 2003, pet. ref'd) (mem. op., not designated for publication) ("The officers not only had the right to stop and detain Williams for driving with only one headlight, but the officers also could have arrested him for that offense.").

[2]Sergeant West testified that before stopping appellee's car, he had conducted thousands of traffic stops over the course of his career.

After appellee's arrest but while she was still at the scene of the traffic stop, she asked to see the allegedly malfunctioning headlight.[3] When Sergeant West took appellee to look at the headlights, he saw that both of them were working properly. Sergeant West checked the headlights on low and high beams, and they worked properly regardless of which position they were in. Another officer arrived at the scene and likewise saw that both headlights were working correctly.

The State charged appellee with driving while intoxicated (DWI). Appellee filed a motion to suppress "the stop of [her] vehicle without [a] warrant or reasonable suspicion." She argued that the stop violated provisions of the federal and state constitutions and that evidence that the police obtained after the stop was therefore inadmissible.

The trial court held a hearing on appellee's motion. At the hearing, the trial court received testimony from Sergeant West and watched a video of the traffic stop that was captured by a camera inside his patrol car. Sergeant West explained that because his patrol car's camera pointed straight ahead, it did not record what he saw concerning appellee's right headlight when he turned his head to the right side. On direct-examination, Sergeant West did not waver in his testimony that before appellee's car passed in front of him at the intersection, its

---

[3]Appellee's statement of facts implies that her arrest occurred after she asked to view the headlights; Sergeant West's testimony and the recording from his patrol car demonstrate the opposite.

3

right headlight was not illuminated.  In response to questioning by appellee's counsel, Sergeant West agreed that the only evidence of appellee's right headlight being out was his personal observation of her car before it passed through the intersection in front of him.

After Sergeant West's testimony concluded, appellee urged the trial court to suppress evidence stemming from the traffic stop on the ground that Sergeant West was "mistaken" about the right headlight ever being out because he saw it at an angle that made viewing it difficult.  Appellee emphasized that no evidence independently corroborated Sergeant West's testimony that the right headlight was out.

The State asked the trial court to deny appellee's motion to suppress.  The State argued,

> [I]t comes down to whether or not you believe the sworn testimony of a sergeant officer with thousands of traffic stops and over a decade of police experience under his belt. . . .  There are lots of reasons how something like this could happen:  The bulb could be loose . . . .
>
>     . . . .
>
>     . . .  There could be problems with the wiring, the bulbs, whatever.  However, we do not -- the State does not have the burden to prove to Your Honor today beyond a reasonable doubt that the headlight was functioning or not functioning.  The burden that falls to us today is to show . . . *that this police officer had a reasonable suspicion that that light was not working and that that's the reason why he pulled this Defendant over*. . . .
>
>     . . . .
>
>     We would ask Your Honor simply to make a common sense, good faith credibility judgment that this police officer with his years of

4

training and experience both in the classroom, in the military and in the field, and his sworn testimony, that he personally observed that headlight being out, and we would ask that you deny this Motion to Suppress. [Emphasis added.]

After the parties concluded their arguments, the trial court granted the motion to suppress. The court explained on the record at the hearing,

After . . . hearing the testimony of the officer in this case, *I don't have any doubt as to the credibility of the officer*, but my issue is when I look at the videotape and I look to see if the glow from the headlights look -- appear to be even on each side, it's not a hundred percent, but they appear to be even as though *when he got behind the car, both lights were operating. That's what it appears to me if I'm looking at it from behind. And for that reason, I have to conclude that a mistake was made.* And for that reason, I'm going to grant the Motion to Suppress. [Emphasis added.]

The State brought this appeal.[4]

## The Trial Court's Suppression Ruling

In three points that it briefs together, the State argues that the trial court misapplied jurisprudence concerning the reasonable-suspicion standard for conducting a traffic stop when it granted appellee's motion to suppress. The State argues that Sergeant West's credible testimony provided reasonable suspicion for the traffic stop and that the trial court "mistakenly relied on after-the-fact information to undermine the validity of the stop."

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2015).

5

the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

Therefore, we give almost total deference to the trial court's rulings on questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A traffic stop for a suspected violation of law is a "seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment. *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014).

6

To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of rebutting the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

A temporary detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000); *see also Dunn v. State*, 478 S.W.3d 736, 741 (Tex. App.—Fort Worth 2015, pet. ref'd) (stating that "reasonable suspicion is the threshold for a traffic stop"); *Fernandez v. State*, 306 S.W.3d 354, 356 (Tex. App.—Fort Worth 2010, no pet.) ("[A]n officer may stop and detain a driver, rather than arrest the driver, on reasonable suspicion of criminal activity."). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or

7

soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.*

The legality of a traffic stop based on reasonable suspicion does not depend upon a showing that an actual offense was committed; it is sufficient to show that the officer reasonably believed that an offense was in progress. *Fernandez*, 306 S.W.3d at 357. Thus, at a suppression hearing, the State need not establish that a crime occurred prior to the investigatory stop but must elicit testimony showing sufficient facts to prove that reasonable suspicion existed that a particular person was engaged in criminal activity. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Reasonable suspicion requires only some "minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012).

In explaining its decision to grant appellee's motion to suppress, the trial court did not doubt (and therefore appeared to accept) Sergeant West's credibility.[5] In other words, the trial court did not question Sergeant West's honesty in his assertion that he believed he saw appellee's right headlight out as she approached his patrol car, but the trial court concluded that Sergeant West

---

[5]Appellee contended in oral argument that the trial court found Sergeant West to be credible but mistaken. And appellee appeared to agree with the trial court's assessment; her counsel stated, "[Sergeant West is] a credible person, but credible people make mistakes. It happens."

was mistaken in that belief based on how appellee's headlights looked "when [Sergeant West] got behind the car."

Fully deferring to the essential findings on which the trial court based its decision to suppress evidence—that Sergeant West credibly and honestly believed that he saw appellant's right headlight out but was mistaken in that belief—we conclude that the trial court misapplied the law in making the decision.[6] *See Amador*, 221 S.W.3d at 673. An officer's reasonable suspicion may be validly based on articulable facts that are ultimately shown to be inaccurate or false. *See Williams v. State*, 621 S.W.2d 613, 615 (Tex. Crim. App. [Panel Op.] 1981) ("That the automobile was not a stolen automobile is immaterial since the officers at the time of the appellant's arrest and search and the search and inventory of the automobile had probable cause to believe the automobile was stolen."), *cert. denied*, 456 U.S. 908 (1982); *Kelly v. State*, 721 S.W.2d 586, 587 (Tex. App.—Houston [1st Dist.] 1986, no pet.); *see also Illinois v. Wardlow*, 528 U.S. 119, 126, 120 S. Ct. 673, 677 (2000) (explaining that the reasonable suspicion standard "accepts the risk that officers may stop innocent people"). Thus, as the Supreme Court has explained, an officer "might, for example, stop a motorist for traveling alone in a high-occupancy vehicle lane,

---

[6]A trial court's findings of fact supporting its decision on a motion to suppress may be stated on the record at a hearing. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006); *see also Flores v. State*, 177 S.W.3d 8, 13 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (reviewing a trial court's oral findings of fact on a motion to suppress), *cert. denied*, 547 U.S. 1152 (2006).

9

only to discover upon approaching the car that two children are slumped over asleep in the back seat. The driver has not violated the law, but neither has the officer violated the Fourth Amendment." *Heien*, 135 S. Ct. at 534; *see Robinson v. State*, 377 S.W.3d 712, 720–21 (Tex. Crim. App. 2012) ("[A] mistake about the facts, *if* reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be.").[7]

One of our sister courts recently applied this principle in *Trevino v. State*, Nos. 03-14-00009-CR, 03-14-00010-CR, 2016 WL 463658, at *5 (Tex. App.—Austin Feb. 5, 2016, pet. filed) (mem. op., not designated for publication). There, an officer stopped the defendant's car for failing to come to a complete stop at a stop sign. *Id.* The trial court found that the defendant had completely stopped at the stop sign but denied the defendant's motion to suppress. *Id.* The appellate court affirmed the denial of the defendant's motion to suppress, explaining,

> [W]hether or not appellant committed a traffic violation . . . is not the issue. *The question is whether Officer Salinas had a reasonable suspicion that appellant committed one when she initiated the traffic stop.*

---

[7]There are no facts in the record indicating that Sergeant West's belief that appellee's right headlight was out when he first saw her car from one hundred yards away while looking to his right was unreasonable while at the same time being credible and honest. The trial court did not make such a finding; rather, the court concluded that in light of facts developed after appellee's car proceeded through the intersection and after Sergeant West arrested appellee, Sergeant West made a mistake. In other words, the trial court found that Sergeant West's belief that appellee's right headlight was not functioning was inaccurate, not that it was unreasonable.

10

The entirety of the stop-sign encounter occurred during a very brief time span around 10:00 at night. Officer Salinas observed appellant's SUV at the same time two other vehicles were approaching the four-way stop: one traveling directly in front of her and one traveling from the right in the left-hand lane on the cross street, next to the right-hand lane appellant was driving in. The vehicle in the lane next to appellant obscured the officer's view of appellant's SUV for a few seconds. The trial court reached its determination about the traffic violations after having the benefit of reviewing the video numerous times. . . . [A]s the Court of Criminal Appeals recently recognized, "[T]here is a difference between what an officer sees during an ongoing event and what [a reviewing court] see[s] when reviewing a video. . . . *[A court] would be much closer to knowing what the officer observed if [the court] were to view the video only one time, from start to finish, without stopping. But even then, [the court] might not focus on what the officer focused on at the time of the stop.*"

. . . [E]ven accepting the trial court's fact finding that appellant did completely stop, the fact that appellant did so—as demonstrated only by repeated viewings of the traffic-stop video—does not negate Officer Salinas's conclusion that reasonable suspicion to initiate a traffic stop existed at the time she observed him.

*Id.* at *7 (emphasis added) (citation and footnotes omitted) (quoting *Jaganathan v. State*, 479 S.W.3d 244, 248 (Tex. Crim. App. 2015)).

Similarly, the recording from Sergeant West's patrol car, which the trial court relied on after repeated viewings to find that Sergeant West was mistaken[8] about his belief that he had seen appellee's right headlight out, does not negate Sergeant West's initial belief—found by the trial court to be credible—that reasonable suspicion existed to initiate a traffic stop at the time he observed

---

[8]We note that even if the recording shows that both headlights were working when Sergeant West pulled in behind appellee, that showing does not necessarily negate the accuracy of Sergeant West's observation that one headlight was not working before that time.

appellee's car.  *See id.*; *see also Evans v. State*, 440 S.W.3d 107, 118 (Tex. App.—Waco 2013, pet. ref'd) (affirming a trial court's denial of a defendant's motion to suppress because the trial court found that an officer was credible and there was "no dispute that the stop was lawful under the facts as [the officer] perceived them to be").

Through her briefing and oral argument, appellee appears to contend that even if Sergeant West reasonably believed when he first saw her car that her headlight was out, his decision to stop and detain her was nonetheless unreasonable based on facts that he either knew or should have known after pulling behind her.  But Sergeant West did not testify that he saw appellee's right headlight working at any point before he had already arrested her for DWI. Whether an officer has reasonable suspicion is determined from the facts and circumstances actually known to the officer at the time of the detention—what he saw, heard, smelled, tasted, touched, or felt—not what that officer could have or should have known.[9]  *See Duran*, 396 S.W.3d at 572; *Griffey*, 241 S.W.3d at 704

---

[9]For the same reason, Sergeant West's discovery that both of appellee's headlights were working after her DWI arrest does not invalidate his earlier traffic stop based on reasonable suspicion that one light was not working.  *See State v. Duran*, 396 S.W.3d 563, 572 (Tex. Crim. App. 2013); *see also Brodnex v. State*, No. PD-1087-14, 2016 WL 1128274, at *3 (Tex. Crim. App. Mar. 23, 2016) ("In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention.").

As the State argues, an inverse premise is also true in Fourth Amendment jurisprudence—a seizure or search that is unlawful at its inception cannot be validated by evidence of illegal activity that the police later discover.  *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 415 (1963); *State v. Griffey*,

12

(explaining that courts must "look only at those facts known to the officer at the inception of the stop"). "The standard is not what an omniscient officer would have seen, but rather what a reasonable officer would have done with what he actually did see." *Duran*, 396 S.W.3d at 572. And even if Sergeant West had actually observed that the glow from appellee's headlights appeared to be (but was not certain to be) even on both sides after he pulled in behind her—the conclusion that the trial court reached after viewing the recording multiple times—this determination would not have necessarily invalidated his earlier observation that one headlight was not illuminated.

For all of these reasons, we conclude that the findings expressed by the trial court at the suppression hearing—that Sergeant West credibly believed that appellee's right headlight was out as she approached the intersection but that he was simply mistaken in that belief as indicated by subsequent facts—cannot support the trial court's conclusion that suppression of evidence was warranted. *See Heien*, 135 S. Ct. at 534; *Robinson*, 377 S.W.3d at 720–21; *Amador*, 221 S.W.3d at 673. We hold that the trial court erred by granting appellee's motion to suppress evidence based on an alleged lack of reasonable suspicion for the traffic stop, and we sustain the State's three related points.

---

241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd) ("[A] stop or search unlawful at its inception may not be validated by what it turns up.").

13

## Conclusion

Having sustained the State's three points, we reverse the trial court's order granting appellee's motion to suppress, and we remand this case to the trial court for further proceedings.   *See* Tex. R. App. P. 43.2(d); *State v. Crawford*, 463 S.W.3d 923, 932 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g).

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

PUBLISH

DELIVERED:  May 12, 2016

14