

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00304-CR

———————————————

TONY STATURE, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 7
Tarrant County, Texas
Trial Court No. 1724153

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Tony Stature appeals his conviction for driving while intoxicated (DWI), second offense. *See* Tex. Penal Code Ann. § 49.04, 49.09(a). In six issues, Stature argues that the trial court erred by: (1) failing to grant his motion to suppress (first issue), (2) admitting blood evidence because the chain of custody was insufficient (second issue) and because the blood evidence was obtained through an invalid search warrant in violation of his rights under the United States and Texas Constitutions (fourth and fifth issues), (3) denying his motion for mistrial after the State presented evidence of a gun (third issue), and (4) denying his motion for directed verdict (sixth issue). We affirm.

## I. Background

On March 25, 2022, Euless police officer Jacob Shoemate was working patrol when he observed a black truck's weaving within its lane. Officer Shoemate followed the vehicle, and he saw the driver, whom he identified as Stature, commit two traffic offenses—failure to signal a lane change and failure to stop at a designated stop. Officer Shoemate stopped Stature's vehicle for the traffic violations, and when he approached, he saw two beer cans inside Stature's vehicle. According to Officer Shoemate, Stature's eyes were red and watery, and he had an odor of alcohol on his person. Officer Shoemate asked Stature to get out of his vehicle so that he could administer field sobriety tests.

Officer Shoemate observed that on the walk-and-turn test Stature exhibited six out of the eight clues of intoxication. Officer Shoemate believed that Stature had lost the use of his mental faculties based upon that test, but he did not find a loss of physical faculties at that time. Stature next performed the one-leg stand test, and Officer Shoemate determined from that test that Stature had lost the use of his mental and physical faculties. A video of Stature's walk-and-turn test and one-leg stand test was played for the jury. Based upon the totality of the tests and his personal observations, Officer Shoemate arrested Stature for DWI.

Officer Shoemate transported Stature to the Euless Police Department and read him his statutory warnings. Stature did not consent to give a blood sample, so Officer Shoemate had to request a search warrant for the blood draw. After getting the search warrant, Officer Shoemate took Stature to the hospital for a blood draw. Michael Bankhead drew Stature's blood at the Texas Health HEB Emergency Department and sealed the vial with a tamper-proof seal. Officer Shoemate took the blood sample to the police property room, and it was later sent to a third-party toxicology lab for testing. Jacklyn Merson, a senior analyst and laboratory supervisor at Armstrong Forensics Laboratory, tested Stature's blood sample and testified that he had a blood alcohol concentration of 0.211—above the legal limit in Texas. *See id.* § 49.01(2)(b).

Before trial, Stature moved to suppress "all evidence subsequent to the red and blues coming on," arguing "that there wasn't the requisite reasonable suspicion of

3

probable cause to justify the detention." The trial court denied the motion, and the case proceeded to trial.

At the close of the State's case, Stature reurged his motion to suppress. He made three suppression requests based upon evidence (1) that Officer Shoemate's testimony was not credible, (2) that there was no probable cause to arrest for DWI because the officer did not administer the field sobriety tests correctly, and (3) that there was no probable cause to obtain the search warrant for the blood draw. The trial court denied the requested motions to suppress. The trial court also denied Stature's request for a directed verdict on the element of intoxication.

The jury convicted Stature of DWI and assessed his punishment at 30 days' confinement in the county jail and a $2,000 fine. The trial court suspended imposition of the confinement portion of the sentence and placed Stature on community supervision for 18 months. This appeal followed.

## II. Motion to Suppress

In his first issue, Stature argues that the trial court erred by failing to grant his pre-trial motion to suppress. Stature does not challenge the trial court's rulings on his motions to suppress made at the close of evidence at trial.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost

4

total deference to a trial court's rulings on questions of historical facts and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

## B. Applicable Law

An officer may make a warrantless traffic stop if he has reasonable suspicion to do so. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). Reasonable suspicion exists when, based on the totality of the circumstances, the officer shows specific, articulable facts at the suppression hearing that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a person is engaging in criminal activity. *State v. Torrez*, 490 S.W.3d 279, 283 (Tex. App.—Fort Worth 2016, pet. ref'd). This is an objective standard that disregards any subjective intent of the detaining officer and looks solely to whether an objective basis for the stop exists. *Id.*

Whether a traffic stop was based on reasonable suspicion does not depend upon showing that an actual offense was committed; it is enough to show that the officer reasonably believed an offense was in progress. *Id.* Thus, at the suppression hearing, the State need not establish that a crime occurred prior to the stop but must elicit testimony showing sufficient facts to prove that reasonable suspicion existed

5

that the person stopped was engaging in criminal activity. *Id.* at 283–84. Reasonable suspicion requires only a "minimal level of objective justification" for the stop. *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012); *see also Daniel v. State*, 683 S.W.3d 777, 778 (Tex. Crim. App. 2024) (holding that an officer's reasonable misinterpretation of state criminal law will not undermine the reasonable suspicion required to conduct a traffic stop).

**C. Discussion**

At the suppression hearing, Officer Shoemate testified that he stopped Stature for two traffic violations: (1) failure to signal a lane change, and (2) failure to stop at a designated point. On cross-examination, Officer Shoemate was unable to identify the specific statute for either of the traffic violations.

Section 545.104 of the Transportation Code requires an operator to use a signal to indicate an intention to turn, change lanes, or start from a parked position. Tex. Transp. Code Ann. § 545.104(a). Officer Shoemate specifically testified that he observed Stature change lanes without using a signal and that such failure to signal was a traffic violation.

Section 544.007 of the Transportation Code states that an operator of a vehicle facing a steady red signal shall stop at a clearly marked stop line. *Id.* § 544.007(d). In the absence of a stop line, the operator shall stop before entering the cross walk on the near side of the intersection. *Id.* Officer Shoemate testified that the traffic signal was red the entire time Stature was approaching and that Stature stopped his vehicle

seven to eight feet into the crosswalk. Officer Shoemate stated that Stature's failure to stop at the designated stop was a traffic offense. The trial court observed the dash-camera video that showed where Stature stopped his vehicle at the traffic signal.

Stature argued at the hearing that the State did not provide evidence of reasonable suspicion for the traffic stop because Officer Shoemate's testimony was not credible and was the only evidence that supported the failure to signal a lane change violation and because the evidence showed that he did not completely pass the line of the crosswalk. The trial court determined that there was reasonable suspicion to initiate the traffic stop based upon Officer Shoemate's testimony and the dash-camera video.

Although he could not identify the appropriate statutory references, Officer Shoemate testified unequivocally that he had observed Stature commit two traffic violations. His testimony provided sufficient facts to prove that he reasonably believed an offense was in progress. *See Torrez*, 490 S.W.3d at 284.

On appeal, Stature argues that the trial court erred by denying his motion to suppress because the articulated facts did not match the reason for the stop. He contends that Officer Shoemate testified the traffic stop was for failure to stop at a designated place—a violation of Section 544.010,[1] which deals with stop signs and

---

[1]Section 544.010 provides that an operator of a vehicle approaching a stop sign or a yield sign shall stop at a clearly marked line. Tex. Transp. Code Ann. § 544.010(a)–(c). In the absence of a clearly marked stop line, the operator shall

yield signs,—and there was no evidence he failed to stop at a stop sign or yield sign. We disagree. Officer Shoemate specifically testified that the traffic signal light was red and that Stature stopped seven to eight feet into the crosswalk—a violation of Section 544.007(d). Even though he could not identify the specific statute, his testimony was sufficient to establish that he reasonably believed Stature had committed a traffic violation. *See id.*

Stature next argues that there was no evidence Officer Shoemate considered exceptions to the law requiring a signal to indicate a lane change citing, *State v. Cortez,* 543 S.W.3d 198, 206–08 (Tex. Crim. App. 2018). In *Cortez,* the trial court granted the defendant's motion to suppress concluding that there was no evidence of a traffic violation. *Id.* at 202. The court of criminal appeals noted that even if the defendant had committed the traffic violation—driving on an improved shoulder—he was statutorily permitted to do so based upon circumstances listed in the statute allowing a driver to drive on an improved shoulder. *Id.* at 207. Stature contends that for the offense of failure to signal a lane change, Officer Shoemate should have considered the circumstances in which that action was permissible. Unlike the statute considered in *Cortez,* Section 545.104 does not provide for circumstances in which failing to signal a lane change is permissible. *See* Tex. Transp. Code Ann. § 545.104. Thus, there were no statutory exceptions Officer Shoemate was required to consider.

---

stop before entering the cross walk on the near side of the intersection. *Id.* § 544.010(c).

Stature finally argues that Officer Shoemate was not reliable because there were inconsistencies between his report and his testimony at the hearing. He specifically notes that Officer Shoemate indicated in his report that Stature was leaving a business that sold alcohol, but at the suppression hearing he stated he did not observe Stature leave such a business. Officer Shoemate stated that this was a clerical error in his report. He further points out that Officer Shoemate's report indicates there was a 911 dispatch tape included, but at the suppression hearing he stated to his knowledge there was no 911 call. Officer Shoemate stated that he had misunderstood, and he was under the impression that the 911 dispatch tape was referring to the "recording of the traffic stop."

At a suppression hearing, the trial court is the sole trier of facts and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). The trial court observed the demeanor and appearance of Officer Shoemate and was able to resolve any inconsistencies. *See id.* at 24.

Officer Shoemate testified that he observed Stature commit two traffic violations, and the trial court found there was reasonable suspicion to initiate the traffic stop. Viewing the evidence in the light most favorable to the trial court's ruling, we hold that the trial court did not err by denying Stature's motion to suppress at the pre-trial hearing. We overrule his first issue.

### III. Blood Evidence

In his second issue, Stature argues that the trial court erred by admitting the blood evidence because the chain of custody was insufficient. In his fourth and fifth issues, he argues that the trial court erred by failing to exclude the blood evidence because the search warrant to obtain the blood sample was invalid under the United States and Texas Constitutions.

### A. Standard of Review

We review a trial judge's admissibility decision for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). The trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* But if the evidentiary ruling is correct under any applicable theory of law—even if the trial court gave a wrong or insufficient reason for the ruling—we will not disturb it. *Id.*

### B. Chain of Custody

The State offered State's Exhibit 8 (the box for the blood kit sample) and State's Exhibits 8A and 8B (the blood tubes). The trial court admitted State's Exhibit 8 for record purposes only and admitted State's Exhibits 8A and 8B for all purposes over Stature's predicate and Fourth Amendment objections.

Stature argues on appeal that the chain of custody was insufficient to support the admission of the blood evidence. He further contends that the evidence was not properly authenticated under Rule 901(a) of the Texas Rules of Evidence. *See* Tex. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). We have reviewed chain-of-custody complaints as complaints that evidence was not authenticated under Rule 901 even when the appellant's objection did not mention authentication or the rule. *See Preston v. State*, No. 02-22-00024-CR, 2023 WL 4630625, at *3 (Tex. App.—Fort Worth July 20, 2023, no pet.) (mem. op., not designated for publication). Proof of the beginning and the end of the chain of custody will support admission of the evidence barring any showing of tampering or alteration. *Id.* at *4.

Officer Shoemate took Stature to the hospital for the blood draw, and he prepared the seals for the blood vials containing Stature's identifying information as well as the date and the time of the blood draw. Bankhead drew Stature's blood and placed a tamper-proof seal over the top of the vials. The vials were placed in protective sleeves and put into protective containers. The protective containers were put into the blood kit box and sealed. Officer Shoemate took the blood kit box to the Euless Police Department property room and placed it in a refrigerated locker. According to Officer Shoemate, after he leaves the sample in the property room, it is sent off to a toxicology lab for testing.

Merson identified the blood kit box. She testified that when she received the blood sample kit, there was no indication of tampering and that the vials containing the blood were sealed. Merson reviewed the information on the blood kit box against

11

the lab's chain of custody to confirm identifying information. After confirming she had the correct information, Merson conducted the tests on Stature's blood sample.

The beginning of the chain of custody was established by Officer Shoemate's testimony that he was present during Stature's blood draw, the blood vials were sealed and labeled with Stature's identifying information, and the evidence was placed in the police property room. *See id.* Merson's testimony identifying Stature's blood sample kit as the one she received and tested establishes the end of the chain of custody. *See Durrett v. State*, 36 S.W.3d 205, 210 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

Stature contends, however, that the State did not establish the end of the chain of custody because Officer Shoemate did not personally bring the evidence to trial. Officer Shoemate testified that a detective brought the blood sample kit to court for him because he forgot it. Even if we agreed with Stature's argument that the chain of custody did not end with Merson's testing the blood sample, the State is not required to prove a chain of custody if a witness could authenticate the exhibit by other means. *Preston*, 2023 WL 4630625, at *5. Officer Shoemate identified his signature and badge number on the blood samples. Testimony that an item is what it is claimed to be and about its distinctive characteristics satisfies the requirements of authenticating or identifying an item of evidence. *Id.*; Tex. R. Evid. 901(b)(1), (2), (4).

"Absent evidence of tampering, issues regarding the chain of custody bear on the weight, rather than on the admissibility, of evidence." *Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010). Stature contends that there was evidence of

12

tampering because the dates on the blood evidence do not match. Merson testified that she tested the blood sample on April 1, 2022, but her lab analysis report is dated April 6, 2022. Stature argues that it is possible the lab confused two separate blood samples. A mere showing of the opportunity for tampering, absent affirmative evidence of such, is not sufficient to require exclusion of the evidence. *Patel v. State*, No. 2-08-032-CR, 2009 WL 1425219, at *2 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op, not designated for publication). Merson specifically testified that there was no evidence that anyone had tampered with the blood samples. There is no evidence in the record of tampering.

We hold that the State established a proper chain of custody and that there was no evidence of tampering. Officer Shoemate authenticated the evidence by identifying the blood vials and his signature and badge number on the seals. *See* Tex. R. Evid. 901(b)(1), (2), (4). Thus, the trial court did not err by admitting the blood evidence over Stature's chain-of-custody objections. We overrule the second issue.

## C. Invalid Search Warrant

In his fourth issue, Stature argues that the trial court erred by failing to exclude the blood evidence because it was obtained through an invalid search warrant in violation of his Fourth Amendment rights. In his fifth issue, he argues that admitting the blood evidence obtained through an invalid search warrant violated his rights under Article 1, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure.

On appeal, Stature specifically complains that there was no probable-cause affidavit attached to the warrant and that there was no probable cause presented to the magistrate who signed the warrant. The State counters that Stature has not preserved this complaint for review.

When the State offered the blood evidence, Stature's counsel objected, "Well, foundation and predicate I don't believe have been properly laid. That will be our first objection, in addition to . . . So our objection as of right now is, foundation and predicate have not been properly laid and 4th Amendment, 38.23, blood - - unlawful blood search without a warrant." The trial court sustained the foundation and predicate objections and overruled the Article 38.23 objection.

Officer Shoemate then testified that he was able to identify the blood vials because his signature and badge number were on them as well as Bankhead's signature and the date and time of the blood draw. The State again offered State's Exhibit 8 and State's Exhibits 8A and 8B. Stature's counsel "renewed [his] objections." The trial court admitted State's Exhibit 8 for record purposes only and admitted State's Exhibits 8A and 8B for all purposes over Stature's predicate and Fourth Amendment objections.

The State argues that the heart of Stature's complaint was the lack of predicate and chain of custody for the evidence, and although he referenced the Fourth Amendment, he did not argue at any point that the search warrant lacked an affidavit or that the warrant was not supported by probable cause.

14

To preserve a complaint for appellate review, a party must make a timely request, objection, or motion with sufficient specificity to apprise the trial court of the complaint. Tex. R. App. P. 33.1(a); *Saldano v. State*, 70 S.W.3d 873, 886–87 (Tex. Crim. App. 2002); *Vafaiyan v. State*, 279 S.W.3d 374, 383 (Tex. App.—Fort Worth 2008, pet. ref'd.). The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004); *Vafaiyan*, 279 S.W.3d at 383.

Stature's argument at trial was that the State had failed to lay the proper foundation and predicate for the blood evidence. Stature's counsel referenced the Fourth Amendment and Article 38.23, but only stated "unlawful blood search without a warrant." State's Exhibit 5 (the search warrant) was admitted for record purposes without objection. Stature did not object or make the trial court aware that there was no probable cause affidavit attached to the warrant. At no time did Stature object that there was no probable cause for the warrant. At the close of evidence, Stature orally moved to suppress "on the probable cause contained within the search warrant, specifically the times." However, he does not challenge the denial of that motion to suppress on appeal.

Because Stature failed to preserve his argument that the search warrant was invalid because there was no probable-cause affidavit attached to it and no probable cause presented to the magistrate, he has waived his complaint for review. Tex. R.

15

App. P. 33.1(a)(1)(A); *see Vafaiyan*, 279 S.W.3d at 383. We overrule Stature's fourth and fifth issues.

## IV. Gun Evidence

In his third issue, Stature argues that the trial court erred by denying his motion for mistrial when the State offered evidence of a gun.

### A. Standard of Review

We review the denial of a motion for mistrial for an abuse of discretion, and we must uphold the ruling if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). A mistrial is appropriate only in extreme circumstances for a narrow class of prejudicial and incurable errors. *See Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). We balance three factors in reviewing whether a mistrial was warranted: (1) the misconduct's severity (the magnitude of the testimony's prejudicial effect); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007).

Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (holding that a prompt instruction to disregard, coupled with the case's circumstances, may render an error harmless). This is because a jury is presumed to

follow an instruction to disregard unless something in the record suggests that it could not follow the instruction. *Coble*, 330 S.W.3d at 292–93.

## B. Discussion

On redirect examination, the State asked Officer Shoemate questions about the inventory of Stature's car. When the State asked Officer Shoemate what items he put in inventory, he responded "Item 1 was a Ruger LCP .380." The trial court sustained Stature's relevance objection and instructed the jury to disregard Officer Shoemate's answer. The trial court denied Stature's request for a mistrial.

The testimony concerning the gun was very brief and consisted only of the name of the gun found in Stature's vehicle. Stature contends that the testimony implies that he also committed the crime of unlawfully carrying a weapon, but there was no other testimony concerning the gun, its association with Stature, or any other possible offenses. The trial court promptly instructed the jury to disregard the statement, and the jury is presumed to follow the trial court's instruction. *Id.* Officer Shoemate testified that he believed Stature had lost his mental and physical faculties, and the jury observed Stature's performance on the field sobriety tests. Merson's testimony that Stature's blood alcohol concentration was 0.211 provided strong evidence for conviction.

The gun evidence was not so prejudicial that it was an extreme circumstance warranting a mistrial. *See Hawkins*, 135 S.W.3d at 77. We overrule Stature's third issue.

## V. Directed Verdict

In his sixth issue, Stature argues that the trial court erred by denying his motion for directed verdict.

### A. Standard of Review

A motion for directed verdict is essentially an evidentiary-sufficiency challenge. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990). In our evidentiary-sufficiency review, we view all evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

18

## B. Applicable Law

A person commits the offense of DWI if the person is intoxicated while operating a vehicle in a public place. Tex. Penal Code Ann. § 49.04(a). Intoxicated is defined as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or "having an alcohol concentration of 0.08 or more." *Id.* §49.01(2)(a), (b).

## C. Discussion

Stature first argues that the evidence is insufficient because the blood evidence should not have been admitted without probable cause for the warrant. Even if the trial court had erred by admitting the blood evidence, we must consider all evidence, even improperly admitted evidence, when conducting a legal sufficiency analysis. *Gardner v. State*, 306 S.W.3d 274, 285 n.6 (Tex. Crim. App. 2009).

Stature also argues that Officer Shoemate's testimony was contradictory and inaccurate and that the field sobriety tests were administered incorrectly. The jury, as factfinder, was free to judge the weight of the evidence and the credibility of the witness's testimony and resolve any conflicting inferences therefrom. *Ybarra v. State*, No. 02-23-00115-CR, 2024 WL 1100785, at *3 (Tex. App.—Fort Worth Mar. 14, 2024, pet. ref'd) (mem. op., not designated for publication); *see Braughton*, 569 S.W.3d at 608.

Officer Shoemate observed Stature commit two traffic offenses. He testified that he determined Stature had lost the use of his mental and physical faculties after

19

observing him perform the field sobriety tests. The jury was able to view Stature perform the field sobriety tests from Officer Shoemate's dash-camera video. In addition, Merson testified that Stature had a blood alcohol concentration of 0.211, which is greater than the 0.08 required for intoxication. *See* Tex. Penal Code. Ann. § 49.01(2)(b). We hold that the evidence is sufficient to support Stature's DWI conviction and that the trial court did not err by overruling his motion for directed verdict. We overrule his sixth issue.

## VI. Conclusion

Having overruled all of Stature's issues on appeal, we affirm the trial court's judgment.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 18, 2024