

IN THE

TENTH COURT OF APPEALS

No. 10-11-00136-CR

JOSHUA EVANS,

                                                                    Appellant

 v.

THE STATE OF TEXAS,

                                                                    Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 10-02910-CRF-361

## O P I N I O N

Johannes Kinny was killed during a robbery at the convenience store where he worked. Joshua Evans was charged in connection with the robbery and Kinny's death. He was convicted of capital murder and sentenced to life in prison. TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2012).

On appeal, Evans complains that the evidence is insufficient to establish Evans's intent to kill, the trial court improperly limited jury selection by preventing Evans from

asking a proper question, and the trial court erred in not suppressing evidence from an allegedly illegal traffic stop and in not suppressing a statement made by Evans. Because the evidence was sufficient to establish Evans's intent to kill while in the course of committing robbery, the traffic stop was not illegal as alleged, the statement sought to be suppressed was not introduced into evidence, and although the trial court did err, by not allowing a proper commitment question, the error was harmless, we affirm Evans's conviction for capital murder.

**BACKGROUND**

Because Evans complains about the sufficiency of the evidence to prove the capital murder element of intent to kill, we find it necessary to burden the reader with an extended discussion of the facts from which the jury had to make that decision. Other facts will be discussed as necessary in connection with the issue to which those facts relate.

Store surveillance, a total of eight cameras, captured most, but not all, of the robbery and murder on video. No sound was captured. Unlike most convenience stores, the cash register at this particular store is not directly by the door. Rather, it is at the end of the first aisle which runs along the wall of windows from the entrance of the store. We will, however, refer to the front of the store from the point of view that the cash register is at the "front" of the store.

The video showed that a man, later identified as Evans, walked into the

convenience store, and came up the first aisle, toward the front counter. He had his right hand in the pocket of the camouflage hoodie he was wearing as he entered the store. The store clerk, Kinny, having previously left the front counter, was near the back of the store. When he noticed Evans, he walked back toward the front counter taking the second aisle.

As Evans rounded the end of the first aisle he confronted Kinny on his approach in the second aisle and pointed a loaded .22 revolver, wrapped in a yellow bandana, at Kinny's face. About this time, Corey Stewart, Evans's accomplice, entered the convenience store and walked up the first aisle.[1] Kinny was about 6 feet from Evans at the time Evans first pointed the gun at him. Kinny continued to approach Evans and attempted to grab the gun with both hands, but Evans pulled the gun down and away from Kinny. Kinny lunged at Evans who then raised the gun to Kinny's stomach and upper body. A struggle ensued with Kinny forcing Evans backward through the store. At some point, not discernible on the video, Kinny was shot. Just behind the last aisle and out of view of the cameras, the gun apparently dropped to the floor as the struggle continued toward the back of the store down the last aisle.

Stewart ran from the first aisle around to the last aisle and approached Kinny, who was still struggling with Evans as Evans continued to move toward the back of the

---

[1] Corey Stewart was also tried and convicted of capital murder in a separate trial. Stewart's conviction was affirmed by this Court in *Stewart v. State*, No. 10-11-00291-CR, 2013 Tex. App. LEXIS 9644 (Tex. App.—Waco Aug. 1, 2013) (not designated for publication). No proceedings in the two cases were held together; therefore, we consider only the record as developed in each of the separate proceedings to decide the issues presented.

store. The remainder of the action continues out of the effective view of surveillance cameras. Kinny can, however, be seen falling. Stewart and then Evans return within the view of the camera and make their way up the third aisle toward the store's front counter. Evans rounded the end of the aisle and headed to the last aisle where he found his gun, picked it up off of the floor, and put it in his pocket. Stewart ripped the cash tray from behind the front counter and started to leave. However, he stopped and retrieved a pistol that was lying on a shelf beneath the countertop. Stewart and Evans left the store. Kinny died at the scene from a gunshot wound to the chest. He also suffered several stab wounds to his back.

The eight shot .22 caliber revolver used by Evans was ultimately located at Stewart's apartment. It was loaded with seven hollow-point bullets and one empty cartridge in its cylinder. An officer testified that hollow-point bullets are designed to expand upon impact and produce the most damage possible. The revolver was old, rusty, and had no grips. The cylinder was severely warped so that it would not freely rotate; further, once it was fired, the cylinder did not lock into place like it was supposed to. The State's expert testified that the revolver would only discharge if the trigger was pulled and stated that the bullet taken from Kinny's body was fired from the revolver. Contrary to the State's expert testimony, Evans's expert testified that the revolver would fire without the trigger being pulled if the hammer was pulled back, but not fully, and released. The expert called this method of firing "fanning." Evans's

expert admitted, however, that the revolver would not have fired had there not been a live round in the cylinder.

Evans and Stewart became suspects in the offense and were arrested after a traffic stop. Stewart was driving the vehicle stopped and Evans was a passenger. Evans was wearing some of the same distinctive clothing noticed on the convenience store surveillance video.

While in jail, Evans bragged to a fellow inmate, Justin Stewart, that when the store clerk reached for a gun, Evans shot him with a .22 revolver. Justin knew who Evans was because of a news story he had seen; however, the news story did not mention a .22 revolver being used in the crime. Justin also said that Evans told him "the other guy" stabbed the clerk until he was dead. Evans told Justin that he and the clerk had a "scuffle" and that was why Evans had scratches and bandages on his face. Justin testified that Evans showed no remorse while telling Justin how he shot the clerk and that Evans was getting excited when telling Justin what happened.

A jailer testified that about a month after Evans was placed in jail, he witnessed a confrontation between Evans and another inmate. The jailer heard Evans tell the other inmate, "I'm a killer. I'll kill you,[]. I'm already a killer."

SUFFICIENCY OF THE EVIDENCE

In his first issue, Evans contends that the evidence is insufficient to show that he *intended to kill* Kinny while in the course of committing a robbery.

Evans argues that the evidence was insufficient to show that he intended to kill Kinny for several reasons: 1) the video shows Kinny was aggressively struggling with Evans at the time Kinny was shot; 2) the video shows Evans lowered the gun and did not shoot Kinny as Kinny approached Evans; 3) the video shows the gun fell to the floor, indicating a struggle over the gun; 4) the gun was old and foreign and manufactured without modern safety designs; 5) the gun would fire without the trigger being pulled; and 6) the gun could have been fired unintentionally. For these reasons, Evans argues, a rational jury could not find an intent to kill.

*Standard of Review*

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the

evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits the offense of capital murder if the person intentionally causes the death of an individual in the course of committing or attempting to commit a robbery. TEX. PENAL CODE ANN. § 19.03(a)(2) (West Supp. 2012). There is no requirement that the intent to cause death be premeditated or formulated prior to the commission of the robbery. *See Rousseau v. State*, 855 S.W.2d 666, 674 (Tex. Crim. App. 1993).

Proof of a requisite culpable mental state is almost always proved by circumstantial evidence. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Dillon v. State*, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978); *Watkins v. State*, 333 S.W.3d 771,

781 (Tex. App.—Waco 2010, pet. ref'd). Intent may be inferred from acts, words, and conduct of the accused. *Hernandez*, 819 S.W.2d at 810. Additionally, the intent to kill may be inferred from the use of a deadly weapon in a deadly manner. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996); *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Godsey v. State*, 719 S.W.2d 578, 580-581 (Tex. Crim. App. 1986); *Watkins*, 333 S.W.3d at 781. If a deadly weapon is used in a deadly manner, the inference of intent to kill is almost conclusive. *Adanandus*, 866 S.W.2d at 215. Where a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Ex parte Thompson*, 179 S.W.3d 549, 556 n.18 (Tex. Crim. App. 2005); *Flanagan v. State*, 675 S.W.2d 734, 744-45 (Tex. Crim. App. 1984) (op. on reh'g); *Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. [Panel Op.] 1981); *Watkins*, 333 S.W.3d at 781.

*Argument*

Evans, relying on the Court of Criminal Appeals opinion in *Foster v. State*, contends evidence presented rebutted the presumption that he intended to kill Kinny. *Foster v. State*, 639 S.W.2d 691 (Tex. Crim. App. 1982). Specifically, Evans asserts that the video rebuts the presumption because it shows he lowered the gun at one point and there was a struggle over the gun. Evans also contends that because the gun could be fired without pulling the trigger and because the State's expert admitted that the gun could have fired accidentally, the presumption of intent to kill was rebutted.

In *Foster*, however, the Court of Criminal Appeals determined that no rational

jury could have found that the defendant intended to kill because other evidence showed that (1) the defendant and the victim had a loving relationship on the evening of the shooting; (2) the weapon involved was defective and fired easily, even with its safety on; (3) after the shooting, the defendant promptly sought medical assistance for the victim and then notified the police; (4) the defendant freely admitted handling the weapon when it discharged; and (5) he was extremely distraught after the shooting. *See id.*; *Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994). Here, in contrast, there was no such "other" evidence; thus, *Foster* is easily distinguished and is not controlling.

Evans pointed a .22 revolver, fully loaded with hollow-point bullets including a live round in the cylinder, toward Kinny's head. He lowered the gun and then raised it to Kinny's chest/stomach area during the struggle. The two were no more than an arm's length apart when Kinny was shot. The video is inconclusive about how or when exactly Kinny was shot. After retrieving his gun, Evans and Stewart left Kinny to die in the convenience store. Unlike *Foster*, he did not seek medical help for Kinny nor did he report the shooting. Evans displayed no remorse. Evans even bragged to an inmate that he shot Kinny and threatened to kill another inmate at the jail, warning the other inmate that he, Evans, was a "killer." At most, the evidence Evans points to presents an alternate explanation for what happened. The jury, being the sole judge of the credibility of the witnesses and having the ability to resolve conflicts, if any, in the

testimony, was free to disregard Evans's view of the evidence and argument as to the circumstances surrounding Kinny's death.

Utilizing the required standard of review, we reject Evans's insufficiency claim. There was abundant evidence from which a rational jury could determine Evans intended to kill Kinny when Evans shot Kinny in the course of the robbery. Evan's first issue is overruled.

## COMMITMENT QUESTION

Evans next argues that the trial court erred when it sustained the State's objection to a question asked by Evans's counsel during voir dire, believing the question to be an improper commitment question. This is a challenge to the trial court's limitation of voir dire questioning.

We review a trial court's ruling regarding the limitation of voir dire questioning for an abuse of discretion. *Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012); *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). A trial court retains discretion to restrict voir dire questions that are confusing, misleading, vague and broad, or are improper commitment questions. *Hernandez*, 390 S.W.3d at 315. To preserve error regarding the manner of voir dire, the record must reflect that (1) the trial court was on notice of a specific, proper question that a party wanted to ask, and (2) the party was precluded from asking it. *See Sells v. State,* 121 S.W.3d 748, 756 (Tex. Crim. App. 2003); *Franklin v. State*, 12 S.W.3d 473, 477 & n. 4 (Tex. Crim. App. 2000); *Nunfio v.*

*State*, 808 S.W.2d 482, 484 (Tex. Crim. App. 1991) (overruled in part on other grounds by

*Gonzales v. State*, 994 S.W.2d 170 (Tex. Crim. App. 1999)).

The question asked by counsel was,

Well, if there was a reasonable doubt in your mind as to whether or not the killing was intentional you would find him not guilty of capital murder even though you believe that he committed a robbery and caused the death?

The State began to object before the jury panel member to whom the question was

directed could answer. The trial court immediately sustained the "objection," and

determined the question was a commitment question. Counsel informed the trial court

that he wished to ask the question to each juror. The trial court again stated that the

question was a commitment question. We find Evans's complaint to be preserved for

review. *See* TEX. R. APP. P. 33.1; *Sells*, 121 S.W.3d at 756.

A commitment question is one that commits a prospective juror to resolve, or

refrain from resolving, an issue a certain way after learning a particular fact. *Standefer v.*

*State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). Often a commitment question requires

a "yes" or "no" answer and the answer commits a juror to resolve an issue in a particular

way. *Id*. Not all such questions are improper, however. *Id.* at 181. Where the law

requires a certain type of commitment from jurors, such as considering the full range of

punishment, an attorney may ask prospective jurors to commit to following the law in

that regard. *Id*. *See also Hernandez*, 390 S.W.3d at 315. Further, for a commitment

question to be proper, one of the possible answers to that question must give rise to a

valid challenge for cause.  *Standefer*, 59 S.W.3d at 182.

Here, the question sought to be asked required a yes or no answer and committed the jurors to resolve an issue in a particular way, *i.e.* find Evans not guilty if they did not believe beyond a reasonable doubt that Evans intentionally killed Kinny even though they believed a robbery and death occurred.  However, it was not an *improper* commitment question.  Because both robbery and intent to kill are elements of capital murder, the law required the jurors to be able to find Evans not guilty of capital murder if they found he did not intend to kill Kinny even though Kinny was killed in the course of committing robbery.  It committed the venire members to follow the law; and if they could not, they would be subject to a challenge for cause.  *See* TEX. CODE CRIM. PROC. ANN. art. 35.16 (b)(3) & (c)(2) (West 2006); *Barajas v. State*, 93 S.W.3d 36, 39 (Tex. Crim. App. 2002).  Further, no additional facts were supplied beyond what was necessary to sustain a challenge for cause.  *See Standefer*, 59 S.W.3d at 182.  Accordingly, the trial court abused its discretion in sustaining the State's objection and limiting Evans's voir dire questioning.

*Harm*

This type of error is of constitutional magnitude, violating the right to be heard found in article I, section 10 of the Texas Constitution.  *See Jones v. State*, 223 S.W.3d 379, 381 (Tex. Crim. App. 2007); *see also* TEX. CONST. art. I, § 10.  Thus, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not

contribute to the conviction. *See* TEX. R. APP. P. 44.2(a); *Jones*, 223 S.W. at 380. We consider the following factors in making this determination:

> (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; (3) the character of the alleged error and how it might be considered in connection with other evidence in the case; (4) the jury instructions; (5) the State's theory and any defensive theories; (6) closing arguments; (7) voir dire; and (8) whether the State emphasized the error.

*Jones v. State*, 264 S.W.3d 26, 28 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *Lancaster v. State*, 319 S.W.3d 168, 171 (Tex. App.—Waco 2010, pet. ref'd).

The defense's theory of the case was that, because of the condition of the gun used and the nature of the struggle for the gun, the shooting was accidental and Evans did not intend to kill Kinny. Thus, Evans could not be found guilty of capital murder.

During voir dire, Evans's counsel explained to the panel members that to prove a capital murder, the State had to prove a robbery and that during the course of that robbery, someone was intentionally killed. He further explained that if only part of the offense was proved, the parties could ask for a lesser included offense instruction and the jury would be able to consider a lesser offense, such as aggravated robbery or murder. He gave an example that if the jury believed an aggravated robbery and a killing took place but did not believe beyond a reasonable doubt the killing was intentional, the jury could find a defendant guilty of the lesser included offense of murder.

Counsel also read the definitions of knowingly and intentionally and explained

that to intend to kill is more serious, *i.e.* capital murder, than merely having knowledge that conduct is reasonably certain to cause death, *i.e.* murder. Some panel members saw a difference between knowing and intentional. A few did not. Of those who did not, one requested a demonstration of the difference. After trying to explain further, the trial court stepped in to give an example and the panel member then understood the difference. However, counsel took issue with the court's example and again explained the difference between knowledge and intent.

Later in his voir dire, counsel returned to the issue of the difference between knowledge and intent. Counsel asked the panel to assume that the State proved beyond a reasonable doubt that there was a robbery and that someone was killed. He asked if anyone believed that would be enough to find a defendant guilty of capital murder without any specific evidence of intent to kill. A few panel members raised their hands. Panel members no. 1 and no. 14 did not require specific evidence of intent to kill. When panel member no. 15 agreed with the others, the trial court interrupted and explained that "An intent to do one thing is not necessary proof that you intended to do something else." After further explanation about how a person is not required to have an intent to kill to commit a robbery, panel member 15 said he could consider a separate intent to kill. Counsel then asked the commitment question.

Later, several panel members were questioned at the bench so that the parties could make their challenges for cause. Of those questioned were the two panel

members who had difficulty finding a distinction between a knowing killing and an intentional killing. Panel member no. 1 said she would find the defendant guilty of capital murder if he knowingly killed rather than intentionally killed someone. She was stricken for cause. Panel member no. 14 assured the court he could follow the law given to him. Panel member no. 15 was not questioned because he or she was rehabilitated during voir dire.

The jury seated saw most of the offense from the store's surveillance camera video. Although it could not be determined from the video precisely when the shot was fired that killed Kinny, as we have held, there was sufficient evidence to support a finding of Evans's intent to kill Kinny. Whether the evidence supported an intent to kill was discussed considerably by both Evans and the State during argument, but there was no emphasis of the "error" of the court by the State and no effort to confuse the jury on the issue that intent to kill must be proven by the State.

The court's charge instructed the jury on various definitions, including intent. The jury was instructed on not only the offense of capital murder, but also the lesser offenses of murder and felony murder. If the jury believed there was no intent to kill but only that Evans knowingly caused Kinny's death, they were given the opportunity to find Evans guilty of murder rather than capital murder. Further, if the jury believed there was no intent to kill but only that Evans committed an act "clearly dangerous to human life" by shooting Kinny, they were given the opportunity to find Evans guilty of

felony murder rather than capital murder or murder.

After considering the record in light of the factors and especially in light of counsel's ability to determine which panel members could not see a difference between knowing and intentional and counsel's ability to strike those members for cause or rehabilitate them, we determine beyond a reasonable doubt that the trial court's error in not permitting the commitment question to be asked did not contribute to the conviction.

Evan's second issue is overruled.

**MOTION TO SUPPRESS–LEGALITY OF STOP**

Next, Evans argues that the trial court abused its discretion in denying his motion to suppress evidence because the evidence was obtained as a result of an illegal traffic stop.

No pre-trial motion to suppress was filed. Evans initially urged a motion to suppress, via an objection, during trial after the officer who conducted the traffic stop testified and his in-car video was introduced into evidence but before the items seized from Evans were introduced. The jury was then excused and a hearing on the objection was held. Evans complained outside the presence of the jury that he believed the traffic stop to be illegal and the eventual introduction of Evans's t-shirt and shoes should be excluded under Article 38.23 of the Texas Code of Criminal Procedure. After considerable discussion, the trial court denied the "motion to suppress." With the next

witness, the State sought to introduce all the items seized from Evans after the traffic stop. Those items included the t-shirt and shoes and also included money and socks. Evans re-urged his previous "objection" as to all items being introduced. It was overruled. On appeal, Evans complains only about the admission of the shoes and socks.

*Presentation*

As a preliminary matter, we determine whether the form of Evans's "motion" was properly presented to the trial court for determination. Article 38.23 is the Texas exclusionary rule, which a defendant may invoke when he asserts that certain evidence was obtained illegally. That provision reads as follows:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005). There is a distinction between the admissibility of evidence under Article 38.23 (which is decided solely by the trial judge) and the jury's role under Article 38.23 in considering evidence that has been admitted. *Holmes v. State*, 248 S.W.3d 194, 199 (Tex. Crim. App. 2008). The issue presented to the trial judge—the admissibility of evidence—is independent of the issue given to the jury in the charge—whether the evidence may be considered in reaching a verdict. *Id.* at

200. Evans only requested a decision by the trial court; he did not request an article 38.23 instruction to the jury and does not complain that one was not given in the charge as to the evidence seized as a result of the traffic stop.

The first sentence of Article 38.23 speaks to the admissibility of evidence. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005); *Holmes*, 248 S.W.3d at 199; *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000). The trial judge determines its admissibility under Rule 104(a), and his "decision to exclude evidence could be determined by a ruling of law, a finding of fact, or both." TEX. R. EVID. 104(a); *Holmes*, 248 S.W.3d at 199 (quoting *Pierce*, 32 S.W.3d at 251).

A defendant may challenge the admissibility of evidence in either of two ways: (1) he may object to the admission of the evidence at the time it is offered at trial and request a hearing outside the presence of the jury; or (2) he may file a pretrial motion to suppress evidence and have it heard and ruled upon before trial. *Holmes*, 248 S.W.3d at 199 (citing TEX. R. EVID. 103(c); TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (West 2006); *Pierce*, 32 S.W.3d at 251). Trial judges "have an obligation to entertain evidence and argument on exclusionary rule objections and to independently and definitively resolve questions of law and fact presented by such objections." *Holmes*, 248 S.W.3d at 199 (quoting 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 4.163 at 263 (2d ed. 2001)).

Thus, by objecting to the legality of the stop and then later to the admissibility of

the evidence seized as a result of the stop, Evans's "motion" to suppress the evidence was properly presented to the trial court.

*Standard of Review*

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Accordingly, we give almost total deference to the trial court's determination of historical facts if supported by the record. *Ford*, 158 S.W.3d at 493. But we review *de novo* the trial court's application of the law to those facts. *Id*. We give the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

*Traffic Stop Testimony*

Officer Ian Mader had been out of field training for about six to seven months at the time of the robbery and murder at the convenience store. When he arrived at work on April 2, 2010, he was briefed about the robbery and murder and also watched the surveillance video from the convenience store. While on patrol, Mader received a

"BOLO," or "be on the lookout," for an older model white Lincoln with the license plate HCK 841. He later saw the vehicle stopped at a traffic light. Mader immediately radioed dispatch that he had located the vehicle and began following it. Immediately after the vehicle pulled into a parking lot, Mader initiated a traffic stop for failing to signal 100 feet before making the turn. Due to what he had seen on the surveillance video, he and another officer on the scene conducted it as a felony stop for the officers' safety. Mader's in-car video of the entire stop was introduced into evidence.

On cross-examination, Mader affirmed that he initiated the traffic stop because he felt a traffic offense had been committed. Although he did not know how to measure it on the video, he stated, "…that day I believe[d] that they did commit a traffic violation…." Mader was aware that later a measurement was taken and it was confirmed that a traffic violation had not occurred, but "…that day [he] firmly believed a traffic violation occurred…." He further explained,

> That day, sir, there's a lot of things going through my mind, a lot of other things and I, whether through inexperience or tunnel vision or whatever the case may be, I did not believe that the vehicle signaled for more than 100 feet. I believe he signaled for approximately 30 feet.

Mader did not know the exact measurement of the distance. He was told later, however, that it was more than 100 feet.

*Argument*

Evans argued at trial and argues on appeal that the officer's belief of the distance traveled between the time the turn signal was activated and the turn was made was

Evans v. State                                                                                          Page 20

unreasonable, thus making the stop illegal. A police officer's reasonable mistake about the facts may yet legitimately justify his own conclusion that there is probable cause to arrest or reasonable suspicion to detain. *Robinson v. State*, 377 S.W.3d 712, 720 (Tex. Crim. App. 2012). This is so because a mistake about the facts, if reasonable, will not vitiate an officer's actions in hindsight so long as his actions were lawful under the facts as he reasonably, albeit mistakenly, perceived them to be. *Id*. at 720-721. There is no dispute that the stop was lawful under the facts as Mader perceived them to be. Evans's argument is that Mader's mistake about the facts was unreasonable.

After listening to the officer's testimony and viewing the video, the trial court determined that Mader reasonably believed he had the authority to stop the vehicle for a traffic violation that he had observed. Because the trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony and his ruling is supported by the record, we find the trial court did not abuse its discretion in denying Evans's motion to suppress.

Evans's third issue is overruled.

**MOTION TO SUPPRESS–STATEMENT**

Finally, Evans complains that the trial court abused its discretion in denying Evans's motion to suppress his confession. The confession, however, was not introduced into evidence. Where evidence obtained as a result of an interrogation has not been used, the appellate court need not entertain a complaint attacking the

admissibility of that evidence. *Baker v. State*, 956 S.W.2d 19, 22 (Tex. Crim. App. 1997).

Thus, even if the denial of his motion to suppress his confession was erroneous, because

the confession was not introduced at trial, Evans was not harmed. *See id*. Evans's

fourth issue is overruled.

**CONCLUSION**

Having overruled each issue presented on appeal, we affirm the trial court's

judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed August 22, 2013
Publish
[CRPM]