

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00115-CR

Albert **DOMINGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2016CRN000387D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice

Delivered and Filed: June 13, 2018

AFFIRMED

Albert Dominguez was convicted by a jury of one count of murder, two counts of aggravated assault with a deadly weapon, and one count of engaging in organized criminal activity. On appeal, Dominguez challenges the sufficiency of the evidence to support his convictions. Concluding that the evidence is sufficient, we affirm the trial court's judgment.

## BACKGROUND

Albert Dominguez and Jesus Alfaro picked up Ani Emily Jones and Litzi Rosales in a white Xterra owned by Alfaro's mother. Dominguez was the driver. Dominguez drove to Erik Ibarra's

house where he was handed two guns and a bag filled with newspaper that Dominguez was going to use as "fake money" to buy marijuana from Julio César Garza. Photographs from a cell phone showed Ibarra was hanging out around the same time with José Villegas, Jesús Rodriguez, Victor Castillo, and Luís Garcia. Villegas's white Titan truck and Ibarra's F250 truck were also shown in the photos. Before locating Julio to attempt the drug deal, Dominguez picked up another person who was later identified as Luís Garcia. Dominguez handed Garcia one of the guns Ibarra had given him and kept the other gun in his possession.

Julio's cousin Alfredo drove Julio to meet Dominguez to make the drug deal. Alfredo was driving his minivan, and Jorge Aguilera was in the back seat. After driving around for some time, Julio instructed Alfredo to follow a white Xterra. Eventually, the Xterra stopped and parked behind a white Titan truck. Alfredo parked behind the Xterra, and a gray Cadillac that was following Alfredo's minivan parked behind Alfredo's van. Julio exited the minivan and went to speak to the driver of the Xterra. After a few seconds, Julio quickly returned to the minivan and told Alfredo to drive away.

Jones testified that Dominguez and Garcia exited the Xterra and began shooting at the van.[1] Alfaro also testified both Dominguez and Garcia were shooting toward the van.[2] Rosales testified

---

[1] After Jones testified Dominguez and Garcia both had guns, the prosecutor asked Jones what happened when they got out of the car, and Jones replied, "Well, they start shooting." When asked if they both started shooting, Jones replied, "For sure the one in the back [Garcia] was shooting." When asked if both guns were being used, Jones replied, "I'm not sure if both, but I think — yeah, because I saw them shooting." When the prosecutor asked Jones why she thought both guns were shot, Jones replied, "Because I picked up my head." When questioned by defense counsel, Jones testified, "I picked up my head, and I saw when the guy in the back [Garcia] was shooting — and I'm pretty sure Albert [Dominguez] was also shooting because I saw." Defense counsel continued to question Jones as follows:

Q. When you were originally questioned you had said, I'm pretty sure about the guy in the back but not sure about Albert?
A. Yes.
Q. Isn't that true?
A. Yes.
Q. And it's not true because you had your head down?
A. Yes.

[2] Alfaro testified, "I heard shots, and that's when I got down. And when I looked up, that's when I saw the doors open and I saw Albert shooting and the other guy shooting towards the green van."

Dominguez and Garcia exited the Xterra with guns, but she did not know if Dominguez was shooting because she covered her face. Casings from two different guns were located at the scene where the shooting occurred, and one officer testified the minivan had fourteen impacts from bullets.

During the shooting, Ibarra drove his truck and stopped next to the Titan truck, blocking Alfredo's minivan. Alfredo drove into Ibarra's truck while attempting to maneuver around it and was able to drive around the corner before his minivan stalled. Alfredo and Jorge exited the minivan. As Alfredo was checking on Julio, the Titan truck and gray Cadillac pulled up. The passenger exited the Titan truck and pointed his gun at Alfredo. The passenger looked inside the van, returned to the Titan truck, and the Titan truck and gray Cadillac drove away.

Julio died from a gunshot wound, and Jorge was shot in the back of the leg. Based on the evidence collected during the investigation, Detective Michael Wu testified Villegas was driving the Titan truck with Rodriguez in the passenger seat, and Castillo was driving the gray Cadillac.

After hearing all of the evidence presented in a four-day trial, the jury found Dominguez guilty of one count of murder, two counts of aggravated assault with a deadly weapon, and one count of engaging in organized criminal activity. Dominguez appeals.

## STANDARD OF REVIEW

In a legal sufficiency review, "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The evidence is viewed in the light most favorable to the verdict because it is 'the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson*, 443 U.S. at 319). "Although

- 3 -

an appellate court cannot act as a thirteenth juror and make its own assessment of the evidence, it does act as a safeguard to ensure that the factfinder's verdict is a rational one that is based on more than a 'mere modicum' of evidence." *Id.* (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)). "[T]he factfinder is allowed to draw any reasonable inference that is supported by the evidence," and "[i]f the record supports reasonable, but conflicting, inferences, we presume that the factfinder resolved the conflicts in favor of the conviction." *Id.*

"Legal sufficiency of the evidence 'is measured by the elements of the offense as defined by the hypothetically correct jury charge.'" *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The hypothetically correct jury charge 'sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* at 89–90 (quoting *Malik*, 953 S.W.2d at 240).

In this case, the jury was charged that it could find Dominguez guilty if the offense was committed either (1) by his own conduct; or (2) as a party if, acting with the intent to promote or assist the commission of the offense, he solicited, encouraged, directed, aided, or attempted to aid Rodriguez, Ibarra, Castillo, Villegas, or Garcia to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011); *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015).

### MURDER AND AGGRAVATED ASSAULT WITH A DEADLY WEAPON

#### A.    Elements of the Offenses

Under the theory charged in this case, a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual." *See* TEX. PENAL CODE ANN. § 19.02(b)(1). The jury was instructed that Dominguez could be found guilty of murder by shooting Julio with a deadly weapon, namely a firearm, either individually or as a party.

Under the theory charged in this case, a person commits the offense of assault "if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another . . . ; [or] (2) intentionally or knowingly threatens another with imminent bodily injury." *Id.* § 22.01(a) (West. Supp. 2017). A person commits the offense of aggravated assault with a deadly weapon if he commits the offense of assault and "uses or exhibits a deadly weapon during the commission of the assault." *Id*. § 22.02(a)(2) (West 2011).

In this case, Dominguez was charged with two counts of aggravated assault with a deadly weapon. For one count, the jury was instructed Dominguez could be found guilty if he intentionally, knowingly, or recklessly caused bodily injury to Jorge by using a deadly weapon, namely a firearm, either individually or as a party. For the other count, the jury was instructed Dominguez could be found guilty if he intentionally or knowingly threatened Alfredo with imminent bodily injury by using or exhibiting a deadly weapon, namely a firearm, either individually or as a party.

## B.    Discussion

Dominguez argues the evidence is legally insufficient to support his convictions because no rational jury could find beyond a reasonable doubt that Dominguez "discharged a firearm during the incident in question." In making this argument, Dominguez discounts Jones's testimony because she expressed uncertainty in response to some questions. Dominguez also discounts Alfaro's testimony because (1) Alfaro admitted to being under the influence of drugs, (2) he suffered a subsequent brain injury which affected his memory, and (3) there were inconsistencies between Alfaro's testimony and Rosales's testimony.

Dominguez's argument, however, ignores that it is within the exclusive province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." *See Cary*, 507 S.W.3d at 766. Here, the jury heard the following evidence:

- Dominguez and Garcia were both in possession of guns and both exited the Xterra at the scene of the shooting,
- two witnesses saw Dominguez and Garcia shooting at the minivan,
- the minivan had fourteen impacts from bullets, and
- cartridge casings from two different guns were recovered from the scene.

From this evidence, a rational jury could have found that Dominguez was shooting at the minivan. Shooting at the minivan occupied by Julio is evidence of Dominguez's intent to cause Julio's death. *See Womble v. State*, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981) (noting "where a deadly weapon is fired at close range and death results the law presumes an intent to kill"); *Evans v. State*, 440 S.W.3d 107, 112 (Tex. App.—Waco 2013, pet. ref'd) ("If a deadly weapon is used in a deadly manner, the inference of intent to kill is almost conclusive."). Furthermore, shooting at the minivan caused bodily injury to Jorge and threatened Alfredo with imminent bodily injury. Therefore, from the testimony presented, a rational jury could have found that Dominguez was guilty of murder and both counts of aggravated assault with a deadly weapon either individually by shooting at the minivan or as a party assisting Garcia in shooting at the minivan.[3]

### ENGAGING IN ORGANIZED CRIMINAL ACTIVITY

A person commits the offense of engaging in criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, the person commits or conspires to commit [the offense of]

---

[3] In discussing in his brief the aggravated assault on Alfredo, Dominguez focuses on the testimony that the passenger in the Titan pointed a gun at Alfredo after the minivan had turned the corner and stopped. However, the jury could have focused on the evidence that Alfredo was inside the minivan when the shots were fired at the minivan. *See Pace v. State*, No. 02-14-00282-CR, 2015 WL 3855588, at *4 (Tex. App.—Fort Worth June 18, 2015, no pet.) (mem. op., not designated for publication) (noting "a rational jury could conclude that the occupants of the car—Suzanne and Caylie—reasonably possessed a fear of imminent bodily injury when multiple shots from a firearm were fired at the vehicle they occupied").

murder [or] aggravated assault." TEX. PENAL CODE ANN. § 71.02(a)(1) (West Supp. 2017); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

In this case, Dominguez contends the evidence is legally insufficient to support his conviction for engaging in organized criminal activity because the evidence is legally insufficient to support his convictions for murder or for aggravated assault with a deadly weapon. Because, as we have concluded, the evidence was sufficient to support Dominguez's convictions for murder and aggravated assault with a deadly weapon, we overrule this sufficiency challenge.

## CONCLUSION

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

DO NOT PUBLISH