

# IN THE
# TENTH COURT OF APPEALS

## No. 10-17-00039-CR

**RUBEN NUNEZ-HERNANDEZ,**

 **Appellant**

 **v.**

**THE STATE OF TEXAS,**

 **Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2015-2469-C1**

## MEMORANDUM OPINION

Appellant Ruben Nunez-Hernandez was convicted by a jury on two counts: (1) continuous sexual abuse of a child, for which he was sentenced to ninety-nine years' incarceration; and (2) indecency with a child by contact, for which he received a concurrent twenty-year sentence of incarceration. A separate judgment was entered for each count. In one issue, Nunez-Hernandez argues that the trial court erred in admitting evidence that was seized after a search of his residence because the State did not prove that he gave voluntary consent for the search. Nunez-Hernandez specifically challenges

the admission of State's Exhibit 7, a sheet from the victim's bed, and State's Exhibits 9 through 16, which consisted of photographs of the sheet and lab reports that indicated Nunez-Hernandez's DNA was on the sheet.

Although a separate motion to suppress was not filed, Nunez-Hernandez objected when the evidence was introduced at trial.

> A defendant may challenge the admissibility of evidence in either of two ways: (1) he may object to the admission of the evidence at the time it is offered at trial and request a hearing outside the presence of the jury; or (2) he may file a pretrial motion to suppress evidence and have it heard and ruled upon before trial. *Holmes* [*v. State*], 248 S.W.3d [194] at 199 [(Tex. Crim. App. 2008)] (citing TEX. R. EVID. 103(c); TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1(6) (West 2006); *Pierce* [*v. State*], 32 S.W.3d [247] at 251 [(Tex. Crim. App. 2000)]). Trial judges "have an obligation to entertain evidence and argument on exclusionary rule objections and to independently and definitively resolve questions of law and fact presented by such objections." *Holmes*, 248 S.W.3d at 199 (quoting 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 4.163 at 263 (2d ed. 2001)).

*Evans v. State*, 440 S.W.3d 107, 117 (Tex. App.—Waco 2013, pet. ref'd). The trial court heard argument on the admissibility of the evidence outside the presence of the jury and overruled Nunez-Hernandez's objections.

A trial court's ruling on a motion to suppress is reviewed on appeal for an abuse of discretion. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

> We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we give almost total deference to the trial court's determination of historical facts if supported by the record. *Ford*, 158 S.W.3d at 493. But we review *de novo* the trial court's application of the law to those facts. *Id.* We give the prevailing party "the strongest legitimate view of the evidence and all reasonable inferences that

> may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

*Evans*, 440 S.W.3d at 117–18; *see also Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016). "[I]f the trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's rulings, and will assume it made implicit findings that are supported by the record." *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016). The trial court did not make express findings of fact in this case.

Nunez-Hernandez argues that he did not give voluntary consent for the officers to search his house and that he did not have sufficient English skills to understand that the officers were asking for consent to search.

Consent to search is a well-established exception to the constitutional requirements of a warrant and probable cause. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *see also Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). The test for whether consent was valid is whether it was voluntary. *Carmouche*, 10 S.W.3d at 331 (quoting *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)). The burden is on the State to show that consent was voluntary by clear and convincing evidence. *Meekins*, 340 S.W.3d at 459; *see also State v. Ibarra*, 953 S.W.2d 242, 245 (Tex. Crim. App. 1997). Whether consent is voluntary is a question of fact to be determined from a review of the totality of the circumstances. *Meekins*, 340 S.W.3d at 459. The trial court must assess both the characteristics of the suspect and the details of the encounter with law enforcement. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). To be

valid, consent must not be coerced "by explicit or implicit means, by implied threat or covert force." *Meekins*, 340 S.W.3d at 458; *see also Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991). The standard is an objective one assessed from the point of view of a reasonable person "without regard for the subjective thoughts or intents of either the officer or the citizen." *Meekins*, 340 S.W.3d at 459 (quotation marks and citation omitted).

A variety of factors have been identified as relevant in determining whether consent was voluntary. *See Meekins*, 340 S.W.3d at 460, n.26 (whether encounter included "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery," and physical and mental condition and capacity of suspect); *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012) (footnoted citations omitted) (whether suspect advised of constitutional rights, length of detention, whether questioning repetitive or prolonged, whether suspect aware he could decline to answer questions, and what kind of psychological impact questioning had on suspect); *Peucker v. State*, 489 S.W.3d 592, 603 (Tex. App.—Texarkana 2016, pet. ref'd) (age, education and intelligence of suspect); *Hutchins v. State*, 475 S.W.3d 496, 498-99 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (whether suspect in custody and whether suspect arrested at gunpoint). Conversely, the presence of one or more of the foregoing factors does not mandate a determination that consent was not voluntary. *See Reasor*, 12 S.W.3d at 818 (consent to search deemed voluntary even though suspect was handcuffed after being arrested at gunpoint and officers had already entered the suspect's home illegally while performing a protective sweep); *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (consent not rendered involuntary by failure to inform suspect of his *Miranda* rights

or that results of search could incriminate him and when police sought consent while suspect was receiving treatment for an injury that caused him pain); *Johnson v. State*, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002) (no duty to warn suspect that he has right to refuse consent to search).

The trial court in this case based its determination of the voluntariness of Nunez-Hernandez's consent to search upon the testimony of two witnesses: Jeremy Bost, who was a patrol officer with the McGregor Police Department on the date Nunez-Hernandez's residence was searched, and Nunez-Hernandez.

Bost testified that he went to Nunez-Hernandez's residence after taking a complaint from the victim and her mother that the victim had been abused by Nunez-Hernandez. Bost did not obtain consent from the mother to search the residence. Bost, accompanied by another officer, knocked on the residence door but received no answer. As Bost and the other officer turned to leave, they observed Nunez-Hernandez walking up the driveway. Nunez-Hernandez identified himself after Bost questioned him. Bost then placed Nunez-Hernandez in handcuffs to detain him for officer safety and performed an exterior pat down. Both officers were in uniform and armed, but neither drew his gun when confronting Nunez-Hernandez. Nunez-Hernandez did not try to flee and was cooperative with the officers. Bost testified that he realized that Nunez-Hernandez was not proficient in the English language and that Bost knew very little Spanish. However, Bost further testified that Nunez-Hernandez said that he understood English but that he could not speak it well. Bost noted that Nunez-Hernandez responded to his questions in short sentences and that Nunez-Hernandez never indicated that he

had any problems understanding Bost. Nunez-Hernandez asked what was going on, and Bost told him there was an investigation. Bost did not inform Nunez-Hernandez of the nature of the investigation. Bost told Nunez-Hernandez that the officers needed to make sure there was nothing illegal inside the residence and asked Nunez-Hernandez if he would consent to a search of the house. Bost testified that Nunez-Hernandez consented to the search. Bost did not read Nunez-Hernandez his *Miranda* rights prior to asking for consent, nor did he inform Nunez-Hernandez that he had the right not to consent. Bost's request for consent came only minutes after Nunez-Hernandez was detained.

Bost testified he had Nunez-Hernandez sit at the kitchen table. The other officer remained with Nunez-Hernandez while Bost searched the residence. When asked, Nunez-Hernandez pointed out the victim's bedroom. Bost stated that Nunez-Hernandez never revoked his consent nor limited the extent of his consent. Bost also testified that Nunez-Hernandez was not placed under arrest until they discovered a falsified Social Security card in his wallet. Bost questioned Nunez-Hernandez about the Social Security card, and Nunez-Hernandez was able to answer Bost's questions.

Nunez-Hernandez testified that he was twenty-four years old and originally from Mexico. He testified that he had been in the United States since the age of fifteen. Nunez-Hernandez did not indicate his level of education, but there was nothing to indicate he was of below-average intelligence. Nunez-Hernandez testified that on the day of the search, he saw three police officers at his residence. Nunez-Hernandez stated that he was placed under arrest and in handcuffs after he told the officers his name. Nunez-Hernandez testified that he believed he was not free to leave at that time. Nunez-

Hernandez, who used an interpreter, also testified that he spoke a little English and that none of the officers spoke with him in Spanish. Nunez-Hernandez also testified that he was not read his constitutional rights. Nunez-Hernandez stated that he was never asked for consent to search his residence and that the officers refused to answer him when he asked if they had a warrant or some other authorization to search his home. Bost testified that Nunez-Hernandez never asked them about a warrant or any other type of authorization. Nunez-Hernandez testified that he never gave the officers consent to search his residence. During his testimony, Nunez-Hernandez admitted that he was serving a term of probation for criminal mischief after running his vehicle through a fence.

The issue regarding whether Nunez-Hernandez consented to a search of his residence ultimately relies upon the trial court's determination as to which witness was more credible: Nunez-Hernandez or Bost. By its ruling, the trial court credited the testimony of Bost. The record supports the trial court's implied finding that Nunez-Hernandez voluntarily consented to a search of his residence. Viewing the evidence in the light most favorable to the trial court's ruling, Nunez-Hernandez was sufficiently proficient in the English language that he understood when Bost asked him for consent to search the residence. The record also supports the trial court's implied finding that Nunez-Hernandez was not subjected to any type of coercion, either express or implied. Nunez-Hernandez's encounter with Bost was not his first encounter with the police or the American legal system. Nunez-Hernandez's own testimony that he questioned the officers' authority, even if disputed by Bost, reflects at least a rudimentary knowledge of

his rights. Even though Nunez-Hernandez was handcuffed and not free to leave prior to being asked to consent, no other events occurred that would have objectively caused a reasonable person to believe that he was forced to consent.

Having viewed the evidence in the light most favorable to the trial court's rulings, the trial court's determination that Nunez-Hernandez voluntarily consented to the search of his residence was not clearly erroneous and, thus, not an abuse of discretion. The trial court did not err, therefore, in denying Nunez-Hernandez's motion to suppress. We overrule Nunez-Hernandez's sole issue and affirm the trial court's judgments.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Neill
Affirmed
Opinion delivered and filed June 19, 2019
Do not publish
[CRPM]

