**Opinion filed March 13, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-22-00142-CR
_____

### DESMOND TUGGLE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-20-0984-CR**

### M E M O R A N D U M   O P I N I O N

The jury found Appellant, Desmond Tuggle, guilty of the offense of murder and assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for sixty years. *See* TEX. PENAL CODE ANN. § 19.02(b) (West Supp. 2024). In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction. We affirm.

*Background Facts*

Appellant's girlfriend, Destiny Barrera, testified that she arranged to meet and sell marihuana to an individual at an apartment complex in Odessa. Because she did not know the buyer, Barrera asked Appellant to go with her when she made the sale. Appellant drove Barrera to the apartment complex and took a silver revolver with him. When they arrived, the individual, who Barrera later learned was Osvaldo Renteria, approached the passenger side window of Appellant's vehicle and asked her if she had the marihuana. Barrera testified that she then gave Renteria the marihuana, and he gave her the money.

According to Barrera, she believed Renteria had given her a counterfeit one-hundred-dollar bill. She handed the money to Appellant, and he also believed that the money was fake. When Barrera looked back to the passenger window, Renteria was gone. Barrera then saw Appellant with the gun in his hand, and he was pointing it across her body out of the passenger window. Barrera covered her ears, and Appellant fired one shot out of the window. Appellant hurriedly drove away, and Barrera asked him if he shot Renteria. Appellant told Barrera either Renteria fell because he was scared or because he was shot.

Officer James Kyper with the Odessa Police Department was dispatched to the apartment complex in response to a call of shots fired. Officer Kyper saw Renteria lying on the ground and observed that he had a gunshot wound that entered his back and exited his chest. Officer Kyper provided aid to Renteria until medics arrived on scene. Renteria was taken to the hospital where he later died from the gunshot wound.

Officer Kyper contacted the apartment manager to obtain security footage of the area. Officer Kyper described the security footage, wherein he saw Renteria walk over to the passenger side of a black SUV, engage in a hand-to-hand transaction, and then run away from the vehicle. Officer Kyper then observed an

arm extend from the driver's side of the vehicle to the passenger side and then a muzzle flash. Renteria immediately fell to the ground. The security footage was played before the jury.

After reviewing the security footage, Sergeant Justin Caid with the Odessa Police Department was able to develop a suspect vehicle description that was associated with Appellant. Officers obtained a search warrant for the residence of Appellant and Barrera where they found a counterfeit one-hundred-dollar bill as well as a revolver that was wrapped up in a T-shirt and hidden in a bush. Appellant was taken into custody and interviewed by Sergeant Caid. Sergeant Caid testified that Appellant admitted to shooting Renteria. Appellant told Sergeant Caid that Renteria "tried to rob [him]" and that he fired a shot in defense. However, according to Sergeant Caid, there was no evidence that Renteria had attempted to rob Appellant or Barrera. Sergeant Caid's interview with Appellant was admitted into evidence and published to the jury.

Appellant testified at trial that on the night of the offense, Barrera asked him to "take her somewhere" but that he did not know that she was going to sell marihuana until they arrived at the apartment complex. Appellant said that Renteria gave Barrera the counterfeit money, but Barrera did not give him the marihuana at that time. Barrera handed Appellant the money, and he agreed that it was fake. According to Appellant, Renteria then reached into the vehicle and took the marihuana from Barrera. Appellant testified that he was "scared," so he grabbed his gun. He explained that "in the heat of the moment," he shot his gun one time out of the window but that he was not trying to "hit [Renteria]" or kill him.

*Analysis*

In a single issue, Appellant challenges the sufficiency of the evidence supporting his conviction for murder. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S.

3

307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight witness testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Appellant argues that the evidence at trial was insufficient to support his conviction for murder and asks this court to reform the judgment to reflect a conviction for the lesser-included offense of manslaughter and remand the case for

4

a new punishment hearing. Appellant acknowledges that he did not request a jury instruction on the lesser-included offense of manslaughter. Appellant contends that in *Bowen v. State*, the Court of Criminal Appeals eliminated the requirement that either the defense or the State must request a jury instruction on a lesser-included offense before a court of appeals can reform the judgment to reflect a conviction for the lesser-included offense. 374 S.W.3d 427 (Tex. Crim. App. 2012). Appellant is correct in his assertion that *Bowen* allows an appellate court to reform a judgment without a request for an instruction on lesser-included offense. *See id.* at 432; *see also Turley v. State*, 691 S.W.3d 612, 619 (Tex. Crim. App. 2024) ("If after finding the evidence insufficient to support a greater-inclusive offense the record clearly supports a conviction for an uncharged lesser-included offense, we are authorized, 'indeed required,' to avoid the 'unjust' result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense." (quoting *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014))).

Before *Bowen* is applicable, however, we must determine that the evidence was insufficient to support Appellant's conviction for murder. *Thornton*, 425 S.W.3d at 299–300. Appellant was charged with murdering Renteria in two ways: (1) intentionally or knowingly causing Renteria's death by shooting him with a deadly weapon, and (2) intentionally or knowingly committing an act clearly dangerous to human life—shooting Renteria with a deadly weapon—with the intent to cause serious bodily injury to Renteria, which caused Renteria's death. *See* PENAL §19.02(b)(1), (2). Manslaughter differs from murder with regard to the culpable mental state—manslaughter requires that the defendant acted recklessly, whereas murder requires that the defendant acted intentionally or knowingly. *Compare id*. § 19.04(a) (stating that a person commits manslaughter if the person "recklessly causes the death of an individual") *with id*. § 19.02(b)(1), (2); *see Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (addressing Section 19.02(b)(2) and

Section 19.04(a)); *Arnold v. State*, 234 S.W.3d 664, 671 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (addressing Section 19.02(b)(1)); *see also Walter v. State*, 581 S.W.3d 957, 969–71 (Tex. App.—Eastland 2019, pet. ref'd) (discussing the forms of conduct and mens rea for each statutory method of committing murder under Section 19.02(b)).

Appellant argues that the evidence is insufficient to prove the requisite intent of intentionally or knowingly required to convict him for murder. He maintains that he acted recklessly by "firing a shot into the night" but that he did not intend to cause Renteria's death or intend to cause serious bodily injury to Renteria.

The jury was able to view security footage video that showed the entire encounter between Appellant, Barrera, and Renteria. Further, the jury heard evidence that after Renteria gave Barrera what was believed to be counterfeit money, Appellant aimed his gun out of the passenger window and fired a shot. Appellant's use of a deadly weapon in this manner is evidence from which the jury can infer a specific intent to kill. *Ayala v. State*, 267 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Medina v. State*, 7 S.W.3d. 633, 637 (Tex. Crim. App. 1999)).

Additionally, the evidence shows that Appellant immediately fled the scene after firing a shot out of the passenger window. Appellant's acts of fleeing the scene and not reporting the shooting may be evidence of his specific intent to kill. *See Wilkerson v. State*, 881 S.W.2d 321, 324 (Tex. Crim. App. 1994); *Evans v. State*, 440 S.W.3d 107, 113 (Tex. App.—Waco 2013, pet. ref'd); *see also Clayton*, 235 S.W.3d at 780 ("[A] factfinder may draw an inference of guilt from the circumstance of flight.").

Appellant testified that he was scared because he believed Renteria was going to rob them. Additionally, Appellant testified that he did not try to shoot or kill Renteria. These matters to which Appellant testified were inherently credibility

questions for the jury to resolve.  We defer to the factfinder's role as the sole judge of the witnesses' credibility.  *Brooks*, 323 S.W.3d at 899; *see Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021); *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).  Thus, the jury was free to reject Appellant's version of events if it did not believe he was being truthful.  *See Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, no pet.).

The jury heard evidence that Renteria did not take the marihuana from Barrera and that there was no evidence of a robbery.  Appellant admitted during his testimony at trial that he was in a "flight or fight moment" and that he chose to fight.  He stated that he pointed the gun and shot.

We conclude that there was sufficient evidence to allow a rational jury to find beyond a reasonable doubt that Appellant committed the offense of murder.  *See Jackson*, 443 U.S. at 319.  Because we conclude that the evidence is sufficient to support Appellant's conviction for murder, we need not consider his request to reform the judgment to reflect the lesser-included offense of manslaughter.  *See Thornton*, 425 S.W.3d at 299–300.  We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


March 13, 2025

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.